**SO ORDERED.**

**SIGNED January 03, 2007.**



_____
**ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

IN RE:

PREVENTIVE MAINTENANCE
    SERVICES INC.                                            CASE NO. 06-50111

    Debtor                                                     CHAPTER 11

---

### REASONS FOR DECISION

---

This matter comes before the court as a request to value inventory pursuant to the terms of a confirmed Chapter 11 plan. Preventative Maintenance Services, Inc. ("PMSI or the Debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on March 6, 2006. Regions Bank ("Regions") is a secured creditor of PMSI, and holds a security interest in all of PMSI's movable assets, including accounts receivable, inventory, and equipment. PMSI's plan of reorganization was confirmed on September 29, 2006. PMSI's plan of reorganization provides for the surrender of inventory subject to Regions' security interest and requires that the inventory be

valued by the court. On November 14, 2006, the court held a hearing on valuation. During the hearing, Regions raised two additional issues pertaining to the confirmed plan: (1) whether the plan should be modified to require PMSI to liquidate its own inventory as opposed to surrendering the inventory to Regions, and (2) whether PMSI is in default of its plan obligations for failing to pay cash collateral to Regions within the time period provided in the plan. The court will address each of these issues below.

## BACKGROUND

PMSI's primary business is the maintenance, repair, and overhaul of "reciprocating" engines used in a variety of marine and land-based applications. On March 6, 2006, PMSI filed a petition for relief under Chapter 11. PMSI is a small business debtor as defined in 11 U.S.C. § 101(51D). PMSI cited several reasons for seeking relief, including losses on a heat and power plant project in Nevada, as well as delays in a project for the U.S. Army Corps of Engineers caused by Hurricane Katrina. Regions is one of PMSI's largest secured creditors. PMSI listed the value of Region's claim as $426,533 on its Schedule D, but the balance of the claim has subsequently been reduced through adequate protection payments following the filing of the Schedule D. PMSI contends that the current balance of Region's claim is approximately $393,000. Regions holds a security interest in all of PMSI's accounts receivable, equipment, and inventory. PMSI listed the value of its inventory as $1,686,621.05 on its Schedule B.

On September 26, 2006, the court held a confirmation hearing on PMSI's Combined Plan and Disclosure Statement (hereinafter, the "Plan"). At the conclusion of the hearing, the court ordered PMSI to file an immaterial modification to the plan by September 29, 2006. PMSI filed an

immaterial modification to the Plan, and the Plan (as modified) was confirmed on September 29, 2006.

The Plan provided that the court was to conduct a valuation hearing on the inventory of parts subject to Region's security interest (the "Inventory"). Based on the outcome of the valuation hearing, PMSI was to "transfer to Regions a portion of the inventory equal in value to the amount of its debt." However, if the value of the inventory (as determined by the court) is "less than the amount of the debt, then PMSI will pay the balance of the debt to Regions in equal monthly installments over 60 months ...." The Plan further provides for payments of cash collateral by PMSI to Regions as follows:

> If any debt is still due and owing from PMSI to Regions at the time that the payments described in this paragraph are due, then PMSI shall make the following payments to Regions: (A) 45 days after entry of the order of confirmation – $50,000; (B) 90 days after entry of the order of confirmation – $25,000; (C) 135 days after entry of the order of confirmation – $15,000. If the total debt due and owing from PMSI to Regions at the time that any of these payments are due is less than the amount scheduled to be paid, then the amount of the payment shall be the balance due and owing to Regions at such time.

**DISCUSSION**

**A.     Regions' Objections to the Plan**

As a threshold matter, Regions challenges the provisions in the Plan that provide for the surrender of the Inventory in full or partial satisfaction of its claim. Regions notes that it is not in the business of liquidating inventory, and that PMSI is in the best position to liquidate the Inventory. Regions contends that, by allowing PMSI to surrender the Inventory and by requiring that the value of the Inventory be set by the court *pre-liquidation*, the Plan improperly shifts the cost and risk of

06-50111 - #233  File 01/03/07  Enter 01/03/07 14:50:22  Main Document  Pg 3 of 10

a liquidation sale to Regions. In short, given the condition of the inventory and the costs of a liquidation sale, Regions is concerned that it will actually net only a small fraction of the alleged value of the inventory. Accordantly, Regions argues that PMSI (not Regions) should liquidate the inventory and then apply the proceeds of the sale to Regions' outstanding claim. Regions' objection is essentially a request to modify the Plan. While the court is sensitive to Regions' concerns about the cost and risk of a liquidation sale, the court denies Regions' request to modify the Plan.

Confirmation of a plan binds "the debtor, any entity issuing securities under the plan, and any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan." 11 U.S.C. § 1141(a). Once confirmed, a plan may be amended or modified only pursuant to 11 U.S.C. § 1127, which provides that the "proponent of a plan or the reorganized debtor" may modify the plan before "substantial consummation" of the plan, and only if "circumstances warrant such modification."

Here, Regions has not met the requirements for modifying the Plan post-confirmation. Putting aside the question of substantial consummation, PMSI is the plan proponent, not Regions. Regions cannot, as an objecting creditor, seek a post-confirmation modification under § 1127(b) absent consent from PMSI. Moreover, modification is not warranted under the circumstances. As explained below, the risks that Regions will bear under the current Plan can be adequately addressed in the valuation of the Inventory. Accordingly, Regions' request to modify the surrender provisions in the Plan is denied.

**B.     Valuation of the Inventory**

Turning to the valuation of the inventory, the standards that guide the court are well-settled. In Associates Commercial Corporation v. Rash, 117 S.Ct. 1879 (1997), the Supreme Court held that the valuation of collateral is to be determined in light of the purpose of the valuation and of the proposed disposition or use of the collateral. Where, as here, the "proposed disposition" is that the collateral will be surrendered to the creditor for liquidation, the appropriate valuation standard under Rash is a foreclosure/liquidation standard. In applying this standard, the court may also consider the extent to which the surrender of the Inventory to Regions shifts the risk and cost of liquidation onto a creditor that is not in the business of liquidating inventory of this type. See, e.g., In re: W.B. Simons, 113 B.R. 942, 946 (Bankr. W.D. Tex. 1990).[1] Although Rash arose in the context of a chapter 13 case, its application in chapter 11 cases is not in question. See, e.g., Matter of T-H New Orleans Ltd. Partnership, 116 F.3d 790, 799 (5th Cir. 1997).

During the valuation hearing, PMSI and Regions presented extensive evidence on the condition of the Inventory and the liquidation value of the Inventory.

*1. Condition of the Inventory*

PMSI's exhibits include a detailed schedule that breaks down the parts/equipment that make up the Inventory. PMSI's inventory schedule also includes PMSI's valuation for the inventory. Based on PMSI's schedule, the Inventory consists of approximately 3,300 categories of parts

---

[1] Although Simons was a pre-Rash case, its discussion of risk-shifting in the context of liquidation sales is relevant when applying a foreclosure sale approach to valuation.

Page 5

06-50111 - #233  File 01/03/07  Enter 01/03/07 14:50:22  Main Document  Pg 5 of 10

ranging from $0.25 bolts to a $13,000 generator.[2] Within each category, there are typically multiple items. Some categories include hundreds of identical parts. The hearing testimony focused on two key aspects of the Inventory: condition and obsolescence. With respect to condition, there was no dispute between the parties that some of the Inventory was exposed to salt water during hurricane-related flooding. The parties' dispute centers on the extent of the damage. Regions contends that a "substantial" portion of the Inventory was submerged in salt water, and that these parts cannot be sold without extensive refurbishment. Regions' exhibits included a number of photographs depicting rusted and damaged parts from PMSI's inventory. PMSI counters that only a fraction of the parts were exposed to salt water, and that Regions' photographs overstate the magnitude of the damage. With respect to the parts exposed to salt water, PMSI contends that these parts can be refurbished and sold.

As far as obsolescence, the evidence shows that many of the parts in the Inventory are for reciprocating engines that are no longer being produced. Accordingly, Regions contends that the parts in the Inventory are obsolete and, therefore, there is little or no market for the inventory. Regions points out that, earlier in this case, PMSI attempted to sell some of the Inventory itself and, according to Regions, had trouble finding buyers. In contrast, PMSI presented testimony supporting its argument that, although the Inventory includes parts to engines that are no longer being produced, there is still a significant installed base of the older model engines that will require parts in the future. Moreover, according to PMSI's evidence, there is a significant demand for these parts in light of current market conditions in the energy market.

---

[2] Based on the liquidation values proposed by PMSI.

06-50111 - #233  File 01/03/07  Enter 01/03/07 14:50:22  Main Document  Pg 6 of 10

Considering the evidence as a whole, the court is convinced that a valuation of the Inventory must take into account that some of the parts in the Inventory were exposed to salt water and may be unsalvageable (or salvageable at such a high price that a sale would not be economical). Unfortunately, neither party has provided much evidence to guide the court in quantifying the impact of the exposure to salt water. For example, PMSI's inventory schedule does little to indicate which parts were exposed to salt water. Accordingly, the court will have to make its best judgment on the extent to which the value of the Inventory must be adjusted to take into account saltwater contamination. With respect to obsolescence, the court is persuaded by the testimony of PMSI's witnesses that there is still a market for the Inventory in light of the installed base of older model engines. However, the court must take into account the risk that Regions will bear given that the market for these parts is tied to older model engines.

### 2. *Value of the Inventory*

Both PMSI and Regions presented expert testimony on valuation. PMSI's expert, Mr. Dave Sanderson, used PMSI's inventory schedule to develop what he termed the "orderly liquidation value" of each item on the inventory schedule. Mr. Sanderson's orderly liquidation value for each item averaged approximately 35% of the "replacement value" of the item.[3] PMSI derived the "replacement value" of the items from parts catalogs and other sources. Based on Mr. Sanderson's report, the total "orderly liquidation value" of the Inventory proposed by PMSI is $593,817, which is based on a total replacement value of approximately $1,600,000.

---

[3] PMSI notes that Mr. Sanderson did not place values on almost 100 of the items. However, these "unvalued" items represent only a small fraction of the thousands of items identified on PMSI's inventory schedule.

Regions' expert, Mr. Jeff Henderson, is an auctioneer, but is not qualified as an appraiser. Instead of conducting a formal appraisal of each item in the Inventory, Mr. Henderson estimated what the Inventory would return if sold at auction. In so doing, Mr. Henderson considered the dynamics of the auction process. For example, at auction, items are typically sold in lots of like items, not individually. This process may very well yield little or no value for some items. Mr. Henderson opined that an auction of the Inventory would bring in only $59,109.55 net of auction costs.

### *3. Conclusions on Valuation*

Considering the evidence as a whole, the court finds that the value proposed by PMSI – which averages 35% of what is essentially list price – does not adequately take into account (1) damage to inventory items caused by hurricane-related flooding, (2) obsolescence, and (3) the extent to which Regions (which is not in the business of liquidating this type of inventory) will bear the costs and risks of auctioning off the inventory. On the other hand, Regions has presented the court with very little in the way of a formal appraisal that addresses these issues. Nor is the court persuaded that the value of the inventory is as low as the $60,000 estimate provided by Mr. Henderson. The fact that Mr. Henderson grouped thousands of items of inventory together and attached a blanket value of $15,000 to these items significantly undermines the credibility of his overall estimate. Nevertheless, Mr. Henderson's testimony and estimate is helpful in the sense that it is an attempt by an auctioneer to quantify what these items would net if they were auctioned off by Regions.

Page 8

06-50111 - #233  File 01/03/07  Enter 01/03/07 14:50:22  Main Document  Pg 8 of 10

The court concludes that Mr. Sanderson's values are more appropriate for the higher dollar items in the inventory – specifically, the categories that total over $5,000. With respect to these categories, there are fewer total items that will have to be sold (19 categories out of 3,300 total categories), and the dollar value of each item will be higher in relation to the costs of an auction and the cost of any refurbishment necessary to sell the item. Mr. Sanderson places a total value of $233,067.58 on the Inventory categories that exceed $5,000. With respect to the remaining inventory (which includes thousands of individual parts valued at less than $100), the court will rely on Mr. Henderson's testimony and auction estimates. Mr. Henderson's auction estimate discounts Mr. Sanderson's valuation by approximately 90% to take into account what he believes the inventory would bring at auction. Applying this reduction to the remaining inventory valued under $5,000 (which Sanderson vales at $358, 912), the value placed on these items in the inventory is $35,891. Accordingly, the court fixes the value of the Inventory at $268,958.58 for purposes of the Plan.

**C.     Is PMSI in Default of the Plan?**

Finally, during the hearing, Regions argued that PMSI is in default of the Plan because it allegedly did not timely make the cash collateral payments required by the Plan. Reading this provision in isolation, the court agrees that the Plan apparently requires PMSI to make the cash collateral payments before the court could make a determination on valuation. However, when read in the context of the Plan's other provisions, the court's valuation determination has to be a trigger for the cash collateral payments. Otherwise, PMSI would be forced to make payments that it may not otherwise have to make based on the outcome of the valuation hearing. Accordingly, court

concludes that PMSI is not currently in default. However, PMSI must comply with the Plan's requirements now that the court has made a determination on value.

## CONCLUSION

For the foregoing reasons, the court fixes the value of the Inventory at $268,958.58 for purposes of the Plan. A separate order in conformity with the foregoing reasons has this day been entered into the record of this proceeding.

###